UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| ALISON M. C.,[1]<br><br>        Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI,<br><br>        Defendant. | Case No. 20-cv-03776-RMI<br><br>**ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 36, 39 |

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability insurance benefits under Title II of the Social Security Act. *See* Admin. Rec. at 163-74.[2] Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council (*see id.* at 194-99), thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both Parties have consented to the jurisdiction of a magistrate judge (dkts. 6 & 7), and both parties have moved for summary judgment (dkts. 36 & 39). For the reasons stated below, Plaintiff's motion for summary judgment is granted, and Defendant's motion is denied.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in sixty-six attachments to Docket Entry #25. *See* (dkts. 25-1 through 25-66).

aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## PROCEDURAL HISTORY

In March and August of 2016, Plaintiff filed applications for Title II and XVI benefits alleging an onset date of August 1, 2012, as to both applications. AR at 163. The partially favorable Title XVI application (*see id*. at 1-30) is not at issue in this case. *See* Defs.' Opp. (dkt. 39) at 2. In 2018, the claimant untimely passed away, and from that point forward her mother became the substituted party (however, for the sake of uniformity and clarity, the court will continue to refer to claimant as "Plaintiff"). *See* AR at 163. Following further administrative proceedings, on January 14, 2019, an ALJ denied Plaintiff's Title II application in a written decision. *See id*. at 163-74. In April of 2020, the Appeals Council denied Plaintiff's request for review. *Id*. at 194-99. Two months later, in June of 2020, Plaintiff sought review in this court (*see* Compl. (dkt. 1) at 1-2) and the instant case was initiated.

## SUMMARY OF THE RELEVANT EVIDENCE

The ALJ in this case determined that Plaintiff's "medically determinable mental impairments of depression, anxiety, and antisocial personality disorder, considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic work activities and were therefore nonsevere." AR at 166. Accordingly, the following is a

1  recitation of the evidence of record pertaining to the limitations attending Plaintiff's mental
2  impairments.
3        The record in this case contains several mental health and psychological evaluations. *See*
4  *id*. at 728-735, 4005-13, 4016-21. The first of these evaluations took place in November of 2007
5  (several years before Plaintiff's alleged onset date in 2012), and was performed by Julie A.
6  Wolfert, Psy.D., a clinical neuropsychologist. *Id*. at 4005. In the course of this evaluation, Plaintiff
7  was diagnosed with a reading disorder, depressive disorder, a substance abuse disorder, and
8  antisocial personality disorder with dependent features. *Id*. at 4013. As to the limitations
9  associated with these impairments, Dr. Wolfert rendered the following findings: that Plaintiff's
10 intellectual functioning was estimated to occupy the low average range, with an estimated Full
11 Scale IQ score being situated in the range between 82 and 91; that, due to immature coping skills,
12 Plaintiff was vulnerable to stress, particularly when dealing with people; that her immature coping
13 defenses contributed to her many difficulties in that her impaired coping abilities caused the
14 underdevelopment of her social skills and a low sense of self esteem which, in turn, resulted in
15 various abnormal behavioral manifestations; that "[t]his [] further perpetuate[d] her tendency to
16 misperceive the intentions of others [resulting in] [h]er tendency to be suspicious of others, to
17 misperceive situations and to be hypersensitive to criticisms, judgments and demands [which]
18 [led] to her manipulative behaviors, dishonesty, poor judgment and antisocial acts"; that her
19 vulnerability, when combined with her impaired coping and social skills, caused her to perpetually
20 feel that she was being treated unfairly, which made her defensive and likely to blame others
21 around her; that her leaning towards making loose connections caused her to experience difficulty
22 concentrating while experiencing paranoid thoughts; that she manifested a history of depressive
23 symptoms and addictive behaviors; and, due to these limitations, Dr. Wolfert opined that Plaintiff
24 would be unable to independently and adequately care for her child. *See id*. at 4009-10. Dr.
25 Wolfert also noted that "[w]hen individuals such as [Plaintiff] are anxious, they are likely to act
26 out in impulsive ways." *Id*. at 4011. Plaintiff was also assessed as one who objectified,
27 oversimplified, and ignored complexity, about which Dr. Wolfert opined that "[w]hile these
28 tendencies serve[d] to defend herself against her feelings of hopelessness and helplessness, they

3

1    [were] likely to lead to poor judgment, irresponsible behaviors and impaired coping as is often

2    seen in people with antisocial personality disorder." *Id*. At bottom, Dr. Wolfert summed up

3    Plaintiff's emotional situation as such: "[c]onceptually, this is a woman who feels sick and

4    physically vulnerable, perceives that she is unfairly treated and blames the world and others

5    around her for her difficulties [and] [h]er hypersensitivity to criticism leads to difficulty with

6    concentration, loose thinking patterns and suspicious, paranoid thoughts." *Id*.

7          In March of 2008, Plaintiff was seen by Allen D. Bott, M.D., for a neurological and

8    psychopharmacological consultation. *Id*. at 4016-21. Dr. Bott noted the history of Plaintiff's

9    depression beginning in elementary school, from which point she had suffered from recurrent

10   depressive episodes. *Id*. at 4016. Dr. Bott also noted that – in 2008 – Plaintiff's depressive

11   symptoms could manifest as frequently as three times per week (lasting from a few hours to a full

12   day). *Id*. He also noted that her symptoms typically included weight loss and insomnia and, at

13   times, hyper-insomnia. *Id*. In the end, Dr. Bott noted the following assessment: "[Plaintiff] has a

14   history of major depressive disorder of the recurrent type, currently chronically depressed[,]

15   [h]owever, her disorder might be better characterized as cyclical depression / highly recurrent

16   depression, a non-DSM-IV diagnosis that has most of the features of bipolar disorder with the

17   exception that typically there are not spontaneous hypomanic episodes." *Id*. at 4018. Dr. Bott then

18   added that "[t]he early age of onset of her first depressive episode, the extreme rapidity with which

19   depressive episodes begin and end, as well as their brevity, the comorbid substance and alcohol

20   abuse, and the history of postpartum depression all suggest that she may ultimately fall into the

21   bipolar spectrum, although a bipolar disorder cannot now be diagnosed." *Id*.

22         In February of 2014, Plaintiff was seen by Terralyn N. Renfro, Psy. D., for another

23   evaluation following a referral for that purpose by the state disability determination agency. *Id*. at

24   718-35. In the course of that evaluation, Dr. Renfro also evaluated Plaintiff with major depressive

25   disorder (recurrent type), while noting her daily routine as a cycle between depression-caused

26   insomnia (which kept Plaintiff from being able to sleep at nights) and the consequential fatigue

27   and apathy she experienced during the days which relegated her to her bed for the better part of the

28   daytime hours. *Id*. at 731, 733. Dr. Renfro then opined that Plaintiff's depression caused moderate

4

impairment in her ability to: maintain persistence and pace; to associate with day-to-day work activity, including attendance and safety; and, to perform work activities on a consistent basis. *Id*. at 734. Dr. Renfro also found that Plaintiff's depression caused her to experience "mild to moderate" impairments in her ability to follow detailed and complex instructions, and in her ability to perform work activities without special or additional supervision – as well as finding that Plaintiff "may require assistance with managing her own money." *Id*.

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-step sequential evaluation process to determine whether the claimant is disabled (*id*. § 416.920; *see also id*. at § 404.1520). While the claimant bears the burden of proof at steps one through four (*see Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020)), "the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ appropriately set forth the applicable law regarding the required five-step sequential evaluation process. AR at 164-166.

At step one, the ALJ must determine if the claimant is presently engaged in "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), which is defined as work done for pay or profit and involving significant mental or physical activities. *See Ford*, 950 F.3d at 1148. Here, the ALJ determined Plaintiff had not performed substantial gainful activity during the period between her alleged onset date, August 1, 2012, and the date last insured, December 31, 2014. AR at 166. At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe" (*see* 20 C.F.R. § 404.1520(a)(4)(ii)), "meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant will not be found to be disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe

impairments: type-1 diabetes mellitus; bilateral tenosynovitis; and, bilateral trigger finger. AR at 166.

At step three, the ALJ is tasked with evaluating whether the claimant has an impairment or combination of impairments that meet or equal an impairment in the "Listing of Impairments." *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe impairments that are considered to be sufficiently severe to prevent any individual so afflicted from performing any gainful activity. *Id*. at § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." *Id*. at § 404.1525(c)(3). In order for a claimant to show that his or her impairment matches a listing, it must meet all of the specified medical criteria; and, an impairment that manifests only some of those criteria, no matter how severely, does not "meet" that listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If an impairment either meets the listed criteria, or if one or more impairments are determined to be medically equivalent to the severity of that set of criteria, that person is conclusively presumed to be disabled without a consideration of age, education, or work experience. *See* 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or equals the criteria or the severity of any of the listings. *See* AR at 168.

If a claimant does not meet or equal a listing, the ALJ must formulate the claimant's residual functional capacity ("RFC"), which is defined as the most that a person can still do despite the limitations associated with their impairments. *See* 20 C.F.R. § 404.1545(a)(1). Here, the ALJ determined that Plaintiff retained the ability to perform the full range of work at the medium exertional level – with the sole exception that she would have been limited to only occasional handling and fingering. *See* AR at 168-72. Following the formulation of the RFC, the ALJ must determine – at step four – whether the claimant is able to perform her past relevant work, which is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *See* 20 C.F.R. § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant can perform her past relevant work, the claimant will not be found disabled. *Id*. § 404.1520(f). Otherwise, at

step five, the burden shifts to the agency to prove that the claimant can perform a significant number of other jobs that are available in the national economy. *See Ford*, 950 F.3d at 1149. To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly referred to as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2; or, alternatively, the ALJ may rely on the testimony of a vocational expert ("VE"). *Ford*, 950 F.3d at 1149 (citation omitted). A VE may offer expert opinion testimony in response to hypothetical questions about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy, or the demands of other jobs that may be available in the national economy. *See* 20 C.F.R. § 404.1560(b)(2). An ALJ may also use other resources for this purpose, such as the Dictionary of Occupational Titles ("DOT"). *Id*.

Here, the ALJ determined – based on the VE's testimony – that Plaintiff would not have been able to perform her past relevant work as a medical assistant. *See* AR at 172. Lastly, at step five, the ALJ determined – once again, based on the VE's testimony – that Plaintiff would have been able to perform the functions of a furniture rental clerk or a salon attendant, both of which jobs existed in substantial numbers in the national economy. *See* AR. at 172-73. Accordingly, the ALJ determined that Plaintiff had not been disabled at any time from August 1, 2012, the alleged onset date, through December 31, 2014, the date last insured. *Id*. at 173.

**DISCUSSION**

As stated above, in November of 2007, Dr. Wolfert diagnosed Plaintiff with depressive disorder, antisocial personality disorder, and a reading disorder (*id*. at 4013); additionally, in February of 2014, Dr. Renfro diagnosed Plaintiff with major depressive disorder (*id*. at 733) – both of which were confirmed to a great degree by Dr. Bott's opinion (*see id*. at 4016-20). The ALJ's non-severity finding as to Plaintiff's mental disorders at step two was premised on two principal explanations. *See id*. at 166-67. The ALJ found that the conditions, considered singly and in combination, did not cause more than a minimal limitation in her ability to perform basic mental work activities. *Id*. at 166. In reaching this erroneous conclusion, the ALJ rejected the 2007 opinion of Dr. Wolfert because it was "fairly remote from the claimant's alleged onset date in

1   2012." *Id*. at 171. The ALJ also rejected Dr. Renfro's 2014 opinion because it was "not consistent

2   with the record as a whole, including the remote date last insured [December 31, 2014]." *See id*.

3   The ALJ failed to discuss Dr. Bott's opinion (*see id*. at 166-73).

4       First, it does not require any significant discussion to note that Dr. Renfro's opinion was

5   rendered <u>*before*</u> Plaintiff's last insured date, and so it was not – as the ALJ put it – a "remote"

6   date. Second, as to the limitations caused by Plaintiff's mental disorders, the ALJ incorrectly

7   found that the limitations opined by Drs. Wolfert and Renfro were not consistent with the record

8   as a whole – while failing to mention Dr. Bott's opinion. These opinions were, on the one hand,

9   consistent and harmonious with one another, and they were, on the other hand, not in any way

10  inconsistent with the record as a whole. The ALJ's statement to the opposite effect improperly

11  relied upon certain irrelevant notations in the record (*e.g.*, that Plaintiff appeared not to be in any

12  distress on one occasion, or that she appeared to have a normal affect on another occasion, or that

13  she "was noted to be cooperative and pleasant" on another occasion. *See id*. at 167. However, the

14  ALJ erred in relying on these inconsequential notations entered by intake staff in the course of

15  unrelated treatment for *physical* impairments in order to improperly reject the considered, and

16  consistent, opinions of three examining *mental* health professionals. *See Smolen v. Chater*, 80 F.3d

17  1273, 1285 (9th Cir. 1996) (finding that the ALJ should have given greater weight to a physician

18  with the expertise most relevant to the patient's allegedly disabling condition). In short, aside from

19  the flaws attending the ALJ's expressed reasons for rejecting the opinions of Drs. Wolfert and

20  Renfro (as well as rejecting Dr. Bott's opinion by implication), the ALJ's findings in this regard

21  are also unsupported by substantial evidence. Instead, the court finds that the only quantum of

22  substantial evidence in the record pertaining to Plaintiff's mental impairments is to be found in

23  these opinions.

24      Having found that the ALJ improperly rejected these opinions, they shall now be credited

25  as true, and the ALJ shall be bound to apply the findings and limitations opined by Drs. Wolfert,

26  Bott, and Renfro on remand. *See e.g., Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The

27  Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is

28  not credible any more than Moisa, had he lost, should have an opportunity for remand and further

proceedings to establish his credibility."). There is amply authority for the proposition that the credit-as-true doctrine is applicable even when a federal court's remand order allows for further administrative proceedings rather than the immediate calculation and payment of benefits.[3]

As for the scope of remand, Plaintiff's request for a remand for an immediate calculation of benefits is half-hearted. *See* Pl.'s Mot. (dkt. 36) at 20 (where, in conclusory fashion, Plaintiff devotes a single sentence to the suggestion that an immediate award of benefits is appropriate because the record is fully developed). Because the opinions expressed by Drs. Wolfert, Bott, and Renfro (either individually or combination) are not such that they would classify Plaintiff as conclusively disabled due to the mental disorders involved, the court finds that the matter could indeed benefit from further record development.

To backtrack for a moment – the court will note that by its own terms, the evaluation at step two is a *de minimis* test intended to weed out the most minor of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 153-154; *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2005) (stating that the step two inquiry is a de minimis screening device to dispose of groundless claims)

---

[3] *See also Baltazar v. Berryhill*, No. CV 16-8132-E, 2017 U.S. Dist. LEXIS 83515, at *20-21 (C.D. Cal. May 31, 2017) ("Accordingly, on remand the Administration shall credit as true Dr. Rubinstein's opinion regarding Plaintiff's lifting capacity and shall conduct further proceedings to determine whether Plaintiff is entitled to benefits prior to January 19, 2014."); *Stimson v. Colvin*, 194 F. Supp. 3d 986, 1004 (N.D. Cal. 2016) ("The Court therefore remands for further proceedings. In keeping with the purposes underlying the credit-as-true rule, the Commissioner is instructed on remand to accept Dr. Hoque's diagnosis for the period from September 23, 2011 until Stimson's July 2012 surgery and to devote further administrative proceedings to determining Stimson's ability to work after his surgery."); *S.W. v. Colvin*, No. CV 15-3189-PLA, 2016 U.S. Dist. LEXIS 72834, at *8 (C.D. Cal. June 2, 2016) ("[I]n its previous remand order, which instructed the ALJ on remand to credit as true William's statements concerning plaintiff's limitations . . ."); *Page v. Colvin*, 2016 U.S. Dist. LEXIS 161286, 2016 U.S. Dist. LEXIS 161286, 2016 WL 6835075, at *6 (N.D. Cal. Nov. 20, 2016) ("[T]he Treichler rule should not be interpreted to require that an ALJ be given a second chance to do what the ALJ should have done correctly in the first place."); *Derr v. Colvin*, No. CV-12-00415-TUC-BPV, 2014 U.S. Dist. LEXIS 143961, at *39-40 (D. Ariz. Oct. 8, 2014) ("Accordingly, the Court will reverse the Commissioner's final decision with a remand for further proceedings consistent with this opinion. The ALJ shall, on remand, credit Dr. Mittleman's opinion as true, and credit Plaintiff's statements as true. On remand the ALJ shall make a determination regarding onset date and reviewable findings regarding substance use."); *Adame v. Colvin*, No. EDCV 12-1079 AGR, 2013 U.S. Dist. LEXIS 87694, at *17 (C.D. Cal. June 21, 2013) ("[T]he decision of the Commissioner is reversed and this matter remanded for further proceedings consistent with this opinion. Dr. Sophon's lift/carry restriction must be credited as true on remand."); *see also McNeill v. Colvin*, 2013 U.S. Dist. LEXIS 24752, 2013 WL 645719, at *8 (C.D. Cal. 2013) (crediting treating physicians' opinions as true and remanding for further administrative proceedings rather than giving the Administration a third opportunity to provide legally sufficient reasons for rejecting a treating physicians' opinions); *Smith v. Astrue*, 2011 U.S. Dist. LEXIS 101057, 2011 WL 3962107, at *8 (C.D. Cal. Sept. 8, 2011) (same); *Toland v. Astrue*, 2011 U.S. Dist. LEXIS 15411, 2011 WL 662336, at *8 (C.D. Cal. Feb. 14, 2011) (same).

9

1  (quoting *Smolen*, 80 F.3d at 1290); *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (step-two

2  is a "*de minimis* threshold"). An impairment is non-severe at step two only if the evidence

3  establishes a slight abnormality that has only a minimal effect on an individual's ability to work.

4  *Smolen*, 80 F.3d at 1290. Having credited the opinions of Drs. Wolfert, Bott, and Renfro,

5  Plaintiff's mental impairments must be considered to be "severe" for step two's purposes. As for

6  the upshot of the ALJ's step two error, it cannot be argued that the error was harmless because

7  Plaintiff's mental impairments were not considered at step three, nor were their limitations

8  encapsulated in the RFC. *See Berg v. Saul*, 831 F. App'x 849, 850 (9th Cir. 2020); *Urban v. Saul*,

9  808 F. App'x 453, 455 (9th Cir. 2020).

10  The reason that further administrative proceedings are necessary is because the ALJ would

11  be required on remand to do substantially more than simply calculating and awarding benefits.

12  Instead, the ALJ will be required to reengage the sequential evaluation process – properly – from

13  step three onwards due to the early juncture (step two) of the error, and given also that the

14  improperly rejected evidence is not – in and of itself – conclusively disabling. On remand, the ALJ

15  will need to determine, in the first instance, whether the combination of Plaintiff's impairments

16  (mental and physical) meet or equal the severity of any listed impairment. If that inquiry results in

17  a conclusion that they do not – the ALJ would then need to re-formulate the RFC such as to

18  include the limitations opined by Drs. Wolfert, Bott, and Renfro. In doing so, the ALJ may need to

19  conduct further factfinding by contacting one or more of these three doctors in order to garner

20  additional details about their opined limitations – including but not limited to temporal details

21  relevant to the disability period in question. Thereafter, the ALJ may need the assistance of VE

22  testimony to determine if Plaintiff could perform the functions of any jobs available in the national

23  economy under the rubric of the newly formulated RFC. These are all determinations that must be

24  made at the agency level in the first instance, some of which will most likely require further

25  factual development of the record.

26  //

27  //

28  //

## CONCLUSION

Accordingly, Plaintiff's Motion for Summary Judgment (dkt. 36) is **GRANTED**, Defendant's Cross-Motion (dkt. 39) is **DENIED**, and the case is remanded for further proceedings consistent with the findings and conclusions set forth herein.

**IT IS SO ORDERED.**

Dated: September 13, 2022

ROBERT M. ILLMAN
United States Magistrate Judge